UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ABDULLAH N. A.,[1]

                Plaintiff,

       v.                                  **DECISION AND ORDER**
                                            20-CV-1605

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      Plaintiff Abdullah N. A. ("Plaintiff") brings this action seeking review of the Commissioner of Social Security's final decision that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. 17, 21.

      The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary. *See Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges ["ALJs"] are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same). Upon consideration of the record, and

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only his first name with middle and last initials, in accordance with this Court's Standing Order issued November 18, 2020.

for the reasons set forth below, the Court denies both Plaintiff's motion and the Commissioner's motion. The case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## PROCEDURAL HISTORY

Plaintiff filed an application for DIB on October 27, 2016, alleging disability beginning on August 13, 2011. Tr. 183.[2] Plaintiff identified head, neck, and back problems as limiting his ability to work. Tr. 202. His application was initially denied on March 30, 2017. Tr. 88-98. After timely filing a request for hearing, Tr. 99-100, Plaintiff appeared with his attorney and testified with the assistance of an Arabic interpreter at an in-person hearing on July 25, 2019; a Vocational Expert ("VE") also testified, as did Plaintiff's son. Tr. 29-72. At hearing, Plaintiff renewed a request to amend the disability onset date to March 2, 2013. Tr. 37-8, 284.

The ALJ issued an unfavorable decision on September 27, 2019, finding Plaintiff was not disabled within the meaning of the SSA. Tr. 9-28. On October 14, 2019, Plaintiff requested review by the Appeals Council. Tr. 179-82. On September 16, 2020, his request for review was denied by the Appeals Council. Tr. 1-6. The ALJ's decision thus became the Commissioner's final decision. 20 C.F.R. §§ 404.981, 416.1481.

## DISCUSSION

The Court reviews the record to determine only whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's final decision. 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

---

[2] "Tr. __" refers to pages of the administrative transcript.

2

adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Plaintiff argues that the ALJ erred in the weight he assigned to certain record opinions. Specifically, Plaintiff takes issues with the ALJ's assignment of (1) "great weight" to the March 23, 2017 opinion of non-examining consultant Gary Ehlert, M.D.; (2) "some weight" to the February 17, 2017 opinion of examining consultant John Schwab, D.O.; and (3) "little weight" to the August 19, 2019 opinion of examining consultant John Schwab, D.O., the August 22, 2013 opinion of Cameron Huckell, M.D., and the other record opinions of Cameron Huckell, M.D. and Jeffry Lewis, M.D.[3]

At Step 2, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines. Tr. 15. The ALJ next determined that Plaintiff's impairments did not meet or medically equal the criteria of any listed impairment, including listing 1.04, disorders of the spine. Tr. 16.

Before reaching Step 4, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work,[4] with the following limitations: can

---

[3] The ALJ did not identify the weight he assigned, if any, to the opinions of the remaining four doctors (Nicholas Masyga, D.O., Julie Thomas, D.O., Mohamed Kourtu, M.D., and Daniel Salcedo, M.D.) whose treatment records comprise large swaths of the record before us, nor the additional two doctors (Conrad Williams, M.D. and Winston Douglas, M.D.) whose names appear throughout the record despite the fact that their own treatment records are entirely absent.

[4] Light work is defined by agency regulations as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel and crouch, but never crawl; must avoid exposure to excessive vibration and hazards such as unprotected heights and moving machinery; and can perform work where communication in English is not required as a function of the job. Tr. 16. The ALJ also determined that Plaintiff could "sit, stand, or walk for up to 6 hours in an eight-hour day."[5] *Id*.

Plaintiff contends that consulting physician Gary Ehlert's opinion should be afforded less weight. Specifically, Plaintiff argues that the ALJ's heavy reliance on that opinion in formulating the RFC finding is inconsistent with record evidence, including the opinions of consulting physician John Schwab and treating physician Cameron Huckell, as well as Plaintiff's own testimony. This Court agrees that the Commissioner's final decision is not supported by substantial evidence.

### 1. Consistency of Dr. Ehlert's Opinion with Medical Evidence

In according "great weight" to the March 23, 2017 opinion of non-examining consultant Gary Ehlert, the ALJ considered that Dr. Ehlert was "fully familiar with the Social Security policies and regulations regarding disability." Tr. 20. He also found that Dr. Ehlert's opinion was consistent with the medical evidence of record, and that "no substantive evidence has been submitted subsequent" to his opinion being rendered that would further restrict Plaintiff. *Id*.

---

[5] This limitation, on its face, appears to disqualify Plaintiff from light work; however, the Court recognizes that the hypothetical posed by the ALJ to the VE at the hearing (". . . can sit for up to six hours in an eight-hour day, stand and walk for up to six hours in an eight-hour day . . .") is likely what the ALJ intended here. Tr. 67-8. On remand, the ALJ is directed clarify this finding in the unlikely event he should reach the same conclusion.

As indicated in Plaintiff's brief, Dr. Ehlert did not examine Plaintiff, and appears to have relied on a less than complete set of medical records in formulating his opinion. In fact, aside from the February 2017 consultative opinion of Dr. Schwab, MRI records from August 2011, and January and March 2017 records of Dr. Masyga, it is unclear whether Dr. Ehlert reviewed any of Plaintiff's medical records.[6] This is despite the fact that when Dr. Ehlert issued his opinion on March 23, 2017, Plaintiff had already been seen by Dr. Huckell and Dr. Lewis multiple times.

Dr. Huckell, an orthopedic surgeon, examined Plaintiff on at least four occasions in 2013. Tr. 311-19, 361-71, 372-82, 383-93. His January 2013 records indicate that Plaintiff had a limited lumbar range of motion, a positive straight leg raise test, and utilized a cane. Tr. 313. Upon Dr. Huckell's review of lumbar MRIs taken March 2, 2013, he noted that the disc pathology at L4-5 and L5-S1 appeared new, as compared to the MRIs dated August 28, 2011, and determined that the L5-S1 disc herniation which traversed S1 nerve roots was "significant enough . . . that [Plaintiff] is now considered to have a potential surgical condition." Tr. 370. Additionally, in his records of this same March 2013 appointment, Dr. Huckell opined that Plaintiff should "avoid sitting, standing or walking for more than 2 hours at one time without a break." *Id*.

Dr. Huckell's records of an August 8, 2013 appointment indicate that Plaintiff was still using a cane, and he opined that Plaintiff had reached "maximal medical improvement" with respect to the injuries he had sustained in the August 2011 motor

---

[6] Dr. Ehlert apparently also reviewed the opinion of examining psychiatric consultant Christine Ransom, Ph.D., and found it to be worthy of great weight. Tr. 80. Since no psychiatric conditions were diagnosed or claimed, this Court limits the scope of its review to the physical determinations made in the course of the administrative process.

5

vehicle accident. Tr. 374, 381. On August 22, 2013, he conducted an evaluation for permanency as it pertained to the New York State Workers' Compensation process. Tr. 383. During that evaluation, Dr. Huckell noted that Plaintiff was being treated with both chiropractic care and massage therapy, and utilizing medications including fentanyl patches and Lortab. Tr. 383-84. After conducting a multi-part functional capabilities/exertional abilities evaluation, Dr. Huckell opined that Plaintiff was capable of sedentary work, which would involve exerting up to 10 pounds of force on occasion, and noted that Plaintiff spoke limited English, which contributed to his "poor potential for job retraining." Tr. 392.

Also prior to the issuance of Dr. Ehlert's opinion, Dr. Lewis, a neurosurgeon, examined Plaintiff at least twice in 2017. Tr. 350-51, 495-97. Records of the February 2017 appointment indicate Plaintiff reported that he was in constant pain, which worsened with "sitting or walking for any longer than about 30 minutes." Tr. 495. Dr. Lewis found Plaintiff had diffuse weakness in his left leg and pain at S1. Tr. 496. At an appointment one month later, Dr. Lewis opined that Plaintiff's herniated disc at L5-S1 "could be the source of his left leg and back pain" and prescribed an eight-week course of lumbar physical therapy. Tr. 350.

Neither Dr. Schwab, a family medicine practitioner and consulting physician in this matter, nor Dr. Masyga, also a family medicine practitioner and one of Plaintiff's treating physicians, conducted a functional capacity examination or similar assessment of Plaintiff prior to Dr. Ehlert issuing his opinion. Dr. Schwab's February 2017 records indicate that Plaintiff reported constant, sharp, low back pain that traveled down his legs and resulted in numbness in his left foot. Tr. 324. According to the record, which was

6

compiled with the aid of Plaintiff's son's translation, Plaintiff lived with his sons, used Voltaren gel for pain, and always used a cane. Tr. 324-25. Dr. Schwab found Plaintiff had decreased sensation in his left leg and a positive straight leg raise test on his left side, both standing and sitting. Tr. 326. Finally, Dr. Schwab opined that Plaintiff's use of the cane was medically necessary. Tr. 325.

As noted above, the ALJ determined that Dr. Schwab's February 2017 opinion was entitled to only "some weight," despite his program knowledge and his physical examination of Plaintiff. Tr. 20. The ALJ identified only two reasons for affording his opinion "some weight": (1) the opinion was based on one examination, which occurred more than two years prior, and (2) evidence received at the hearing, including testimony regarding work activity, indicated Plaintiff was not "as limited as [Dr. Schwab] opined." *Id*.

It is perplexing that the ALJ found Dr. Schwab's opinion was so dated that at the hearing he ordered Plaintiff to undergo an additional consultative exam (which was conducted by Dr. Schwab on August 8, 2019 and subsequently assigned "little weight" by the ALJ), yet the ALJ did not take similar issue with the opinion of Dr. Ehlert, which was also more than two years old at the time the ALJ rendered his decision. Tr. 20, 71.

With respect to evidence allegedly procured during the hearing[7], the ALJ stated that earning records showed that Plaintiff had self-employment earnings in 2015 through 2017 and asked Plaintiff to explain that income, and to explain why he had previously indicated that he had not been able to work since his motor vehicle accident in 2011. Tr. 44. Plaintiff explained, via an interpreter, that he collected rent money from

---

[7] This information was actually submitted to the ALJ in the January 22, 2019 pre-hearing brief filed by Plaintiff's attorney. Tr. 285.

7

the tenants of his son's properties, and his son gave him portions of that money. Tr. 45. He also distinguished this from the type of "heavy work" that he used to perform, apparently to explain why he did not believe this subsequent activity qualified as work. Tr. 45, 47-8.

Plaintiff's son Fadel H. also testified at the hearing, although the ALJ's decision does not mention that fact. Fadel testified that he put some of his properties in his father's name, and one tenant insisted on giving his rent payments to Plaintiff since he understood him to be his actual landlord. Tr. 65. While this testimony was provided at hearing to account for income in 2015, tax records indicate that the tenant provided Plaintiff with income reported in 2006 through 2011, as well. Tr. 187-88. Additionally, Fadel testified that his father did not actually perform work in 2015, 2016, or 2017; rather, Fadel issued Plaintiff 1099 forms saying that he was being paid so that his father would not feel like he was receiving handouts from his family. Tr. 64-5.

In light of the foregoing, the ALJ's decision to bestow "great weight" to the March 23, 2017 opinion of non-examining consultant Dr. Ehlert was not supported by substantial evidence. The Court cannot conclude this was harmless error because the ALJ relied heavily on Dr. Ehlert's RFC assessment in fashioning the RFC of record. Significantly, no other source opined that Plaintiff could sit for six hours and stand and/or walk for six hours in an eight-hour workday. To the contrary, the contemporary records of specialists who examined Plaintiff indicate that he had a significantly more limited capacity for sitting, standing, and walking.

### 2. The ALJ's Failure to Apply the Correct Legal Standards

Even if the ALJ had appropriately weighed the medical opinions of record, there are additional problems with his analysis of the case that prevent this Court from finding substantial evidence exists to support his final decision.

### A. Treating Physician Rule

A treating physician's opinion is generally entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)).[8] A treating physician's opinion will not control in all instances; however, an ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Id.* at 129 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

When an ALJ decides not to assign controlling weight to a treating physician's opinion, he is required to "explicitly consider" the *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess*, 537 F.3d at 129 (citing 20 C.F.R. § 404.1527(c)(2))).

In the instant matter, the ALJ not only failed to explicitly consider all the *Burgess* factors, but, as discuss in the previous section, he failed to give good reasons for the lesser weight he assigned to treating sources' opinions. The only opinion afforded "great weight" by the ALJ was the March 23, 2017 opinion of non-examining consultant Dr.

---

[8] The treating physician rule is applicable here as Plaintiff's claims were made prior to March 27, 2017.

9

Ehlert. And yet the Second Circuit Court of Appeals has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians <u>after a single examination</u>." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (emphasis added). It stands to reason that ALJs likewise should not rely overwhelmingly on the findings of a consultative doctor who has not met with the claimant, much less examined him.

### B. Evaluation of Symptoms of Pain

Additionally, the ALJ in this case disregarded clearly established standards for evaluating pain as a symptom of Plaintiff's severe impairments. The Code of Federal Regulations, specifically 20 C.F.R. § 404.1529(c)(3), indicates that, among other factors, a claimant's activities of daily living and treatment received for pain relief are relevant to determinations of the intensity, persistence, and limiting effects of pain. Furthermore, pursuant to 20 C.F.R. § 404.1529(c)(4), in assessing a claimant's RFC, the limiting impact of his or her symptoms of pain must be considered.

Relying generally on both the executed Function Report/Activities of Daily Living Questionnaire ("Questionnaire") and the hearing transcript, the ALJ found that claimant "reported and testified to the independent ability to engage in personal hygiene, can [*sic*] live alone, prepare simple meals, visit with friends and family, spend time with his grandchildren, attend religious services, and maintain the ability to operate a motor vehicle." Tr. 17.

The Court finds that this is a misinterpretation of the record. For example, Plaintiff's response to the Questionnaire indicated that he had such a difficult time shaving that he regularly had to take breaks during the process. Tr. 224. He also required assistance getting dressed and preparing most meals. Tr. 224-25. Plaintiff

indicated that he attended mosque every Friday; however, he stated that he had to pray in a chair because he could not get down on the floor to kneel and bow down. Tr. 227.

While Plaintiff's response to the Questionnaire inquiry "[w]ith whom do you live?" checked the box "[w]ith family," that was crossed out, and the response "[a]lone" was ultimately left checked. Tr. 223. While this reasonably could have created confusion, the ALJ inquired into Plaintiff's living situation at the hearing. Plaintiff first indicated, through the translator, that he lived in an apartment. Tr. 43. Upon further questioning it was revealed that in lived with his son in his house. *Id*. No further clarification was sought.

The ALJ's decision also failed to consider the hearing testimony of Plaintiff's son, Fadel. He testified under oath that he and his wife took care of Plaintiff in the following ways: "cook for him, we wash his clothes, everything that he has for me, I take him everywhere, the car is mine everything."  Tr. 65.

Additionally, the ALJ found that Plaintiff was "referred to pain management and physical therapy but did not follow through with these treatment modalities." Tr. 18. Yet this is wholly inaccurate. The record evidence indicates Plaintiff saw multiple pain management specialists over the years, two different neurosurgeons, engaged in massage therapy and was treated by a chiropractor, received injections for his pain, utilized a cane and a brace, and was prescribed Lortab for his pain before the national crackdown on prescription opiates occurred. Tr. 52-61, 229, 312, 383-84, 431, 452-56, 459, 469-70, 493-97, 503-06, 512-17.

Finally, because record evidence, including objective medical evidence, indicates that Plaintiff was significantly limited physically due to his severe impairments and the associated pain they caused him, this Court believes that it is important for the ALJ to

reconsider whether inconsistencies in the medical evidence were magnified by the obvious language barrier. *See, e.g.*, *Fofana v. Astrue*, 2011 U.S. Dist. LEXIS 120896 (S.D.N.Y. Aug. 9, 2011).

## CONCLUSION

In short, there is not substantial evidence to support either the ALJ's RFC determination or his final decision in this matter. Accordingly, it is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth above, Plaintiff's motion for judgment on the pleadings (Dkt. 17) is DENIED, the Commissioner's cross-motion for similar relief and motion in opposition (Dkt. 21) is DENIED, and the Commissioner's final decision is REMANDED for further administrative proceedings consistent with this Decision and Order. The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

  _s/Richard J. Arcara_
  HONORABLE RICHARD J. ARCARA
  UNITED STATES DISTRICT COURT

Dated:   July 18, 2022
            Buffalo, New York